OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which found appellant guilty of one count of murder in violation of R.C. 2903.02(A). For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
"First Assignment of Error
 "Defendant-Appellant's Conviction is Supported by Insufficient Evidence and is Therefore a Denial of Due Process."
"Second Assignment of Error
 "Defendant-Appellant's Conviction is Against the Manifest Weight of the Evidence.
"Third Assignment of Error
 "Insofar as Any Error Complained of Was Not Adequately Preserved Below, Defendant-Appellant Was Denied the Effective Assistance of Counsel."
The facts that are relevant to the issues raised on appeal are as follows. On December 22, 1997, appellant was indicted on one count of murder, in violation of R.C. 2903.02, in connection with the beating death of Kenny McBride on December 13, 1997. Appellant subsequently entered a plea of not guilty to the charge and on June 8, 1998, the matter came to trial before a jury. The following relevant testimony was presented.
Paula Brown testified that she was forty-three years old and had known the victim, Kenny McBride, since she was a teenager. She stated that McBride would occasionally come to her apartment to visit or watch her children. Brown testified that McBride stopped by to visit her on December 12, 1997 and they played cards. Brown's sister also was visiting. She stated that McBride eventually went into her children's room to lie down and that her three children were sleeping in her bedroom. Brown testified that sometime after midnight two men she knew as "Clown" and "Meechie" knocked on her door. Brown let them in and they rushed past her and asked if McBride was there. When Brown told them McBride was asleep in one of the bedrooms, the men went straight to the back. Brown followed, and when she got to the bedroom the men were already kicking McBride, "stomping him," hitting him in the head, and throwing things at him, including a chair, a television and a lamp. Brown heard the men saying to McBride, "Where is my stuff, man. Where is my shit." She saw the men taking turns beating McBride all over his body while he was on the floor. Brown stated that she watched the attack from the other bedroom, where she stood with the door cracked open slightly. She further testified that after the beating, the man she knew as "Clown" accused her of hiding McBride. The men then left and Brown called the police. Brown identified appellant as the man she knew as "Clown."
The next witness was Charles Brown, Paula Brown's eight-year-old son. Prior to trial, appellant had filed a motion requesting that the trial court interview Charles to determine his competency to testify. At a hearing held on June 1, 1998, the trial court interviewed Charles and concluded that the child was competent to testify. Charles recalled that in December McBride had come to their house to stay for a few days. Charles stated that one night while McBride was at their house the man "got beat up." Charles testified that he and his sisters went to bed at 9:00 that night and were awakened by people yelling. Charles called to his mother, who came to his room and stayed there. Charles testified that while the fight was going on his mother stood by his bedroom door with the door open a crack. He stated that he stood by his mother for a few seconds and saw the other man, "Meechie," beating McBride. Charles stated that he did not see any of the fighting but saw appellant in the living room that night "hollering at everybody in the house." He heard appellant say he was going to shoot McBride.
Officer Michael Koperski, Toledo Police Department, testified that he and his partner were called to Brown's house shortly after midnight on December 13, 1997. Koperski stated that when he arrived at the house he was directed to a bedroom where he found a man lying on the floor, unresponsive and bleeding profusely from the head. He testified that he and his partner remained at the scene for a couple of hours. The testimony of Officer Alexander Schaller, Koperski's partner, was essentially the same as that of Officer Koperski.
Artis Hopkins testified that she was playing cards and drinking beer at Brown's house on the night of December 12, 1997. Hopkins stated that she left Brown's house for a while and returned later that evening. When she approached the house, she heard what sounded like people fighting. Hopkins knocked on the door and appellant looked out the window but did not let her in. She yelled at him to open the door, which he then did. Hopkins testified that when she went in, she saw Brown's sister sitting in a chair crying and heard commotion from the back of the house. She went back toward the bedrooms and saw Brown standing in one of the rooms crying. She then saw appellant and "Meechie" kicking McBride, who was curled up on the floor. Hopkins further testified that she saw someone hit McBride with a chair but could not remember who did it. She testified that the men took a break and then returned to the bedroom and shut the door. Hopkins opened the door and told them to stop. "Meechie" came out of the bedroom and washed blood off his hands while appellant stood there and argued with Brown. Appellant and "Meechie" then left. Hopkins testified that when the police interviewed her that night she did not tell them she knew who had attacked McBride because she did not want to get involved. Several days later, Hopkins told the police that McBride was beaten by appellant and "Meechie."
Dr. Cynthia Beisser, forensic pathologist and deputy coroner, Lucas County Coroner's Office, testified that she performed the autopsy on McBride. She detailed McBride's injuries, which included multiple contusions, lacerations, internal trauma and broken bones throughout his body. Beisser concluded that McBride died of multiple blunt force trauma.
On June 9, 1998, the jury found appellant guilty of one count of murder and on June 12, 1998, appellant was sentenced to serve a term of fifteen years to life in prison.
In his first assignment of error, appellant asserts that the evidence presented at trial was legally insufficient to support a conviction because the state did not prove that appellant intentionally caused the death of Kenny McBride. Appellant argues that it is "totally unclear" that he was an active participant in the assault on McBride.
R.C. 2903.02 states:
 "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."
"Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of an offense. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine:
 "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
This court has thoroughly considered the entire record of proceedings in the trial court. Upon thorough consideration of the law and the evidence presented at trial as summarized above, this court finds that sufficient evidence was presented from which, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found that appellant purposely caused the death of Kenny McBride in violation of R.C.2903.02. Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence because the evidence did not establish that he was an active participant in the murder of McBride.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 21, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial.Id.
We have thoroughly reviewed the evidence in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of the murder of Kenny McBride. Paula Brown, Charles Brown and Artis Hopkins placed appellant in the room where McBride was beaten to death and their testimony established that he was an active participant in the beating. Appellant's second assignment of error is found not well-taken.
In his third assignment of error, appellant asserts that "insofar as any error complained of was not adequately preserved below," he was denied effective assistance of counsel. In this "catch-all" assignment of error, appellant fails to cite to the record at all or articulate any instances wherein counsel's performance fell below an objective standard of reasonableness. Based upon this court's thorough review of the record, we find his third assignment of error not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Melvin L. Resnick, J.,Richard W. Knepper, J., concur.